IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

AMY LYNN HUGHES,                          :

     Plaintiff,                          :

                                    Case No. 3:08cv263

     vs.                                 :

                                      JUDGE WALTER HERBERT RICE

GOODRICH CORPORATION, et al.,             :

     Defendants.                         :

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART DEFENDANT GOODRICH CORPORATION'S MOTION IN LIMINE
TO EXCLUDE EVIDENCE OF UNRELATED CONDUCT OF WHICH
PLAINTIFF WAS NOT AWARE (DOC. #56); DECISION AND ENTRY
OVERRULING MOTION IN LIMINE REGARDING EVIDENCE OF ITS
FINANCIAL CONDITION FILED BY DEFENDANT GOODRICH
CORPORATION (DOC. #63)

---

Plaintiff Amy Hughes ("Plaintiff" or "Hughes") brings this litigation against

her former employer, Defendant Goodrich Corporation ("Goodrich"), and a

supervisor employed by Goodrich, Defendant Tobias Osner ("Osner").  The

gravamen of Plaintiff's Complaint (Doc. #1) is that she was the victim of sexual

harassment while employed by Goodrich.  Osner is alleged therein to have been

one of those who harassed her.  In her Complaint (Doc. #1), Plaintiff has set forth

a number of claims arising under both federal and state law, to wit: 1) a claim

against Goodrich of hostile environment sexual harassment against under Title VII

of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq.; 2) a

similar claim of sexual harassment against Goodrich and Osner under Chapter 4112

of the Ohio Revised Code ("Chapter 4112"); 3) a claim of constructive discharge

for sexual harassment under Title VII and Chapter 4112 against Goodrich; 4) a

claim against Goodrich for the tort of sexual harassment under the common law of

Ohio; 5) a claim against Goodrich for discharge in violation of public policy under

the common law of Ohio; and 6) a claim against both Goodrich and Osner of

intentional infliction of serious emotional distress under the Ohio common law.

This case is now before the Court on Goodrich's Motion in Limine to Exclude

Evidence of Unrelated Conduct of Which Plaintiff Was Not Aware (Doc. #56) and

its Motion in Limine Regarding Evidence of its Financial Condition (Doc. #63).[1]  As

a means of analysis, the Court will rule upon those three motions in the above

order.

I.  Goodrich's Motion in Limine to Exclude Evidence of Unrelated Conduct of Which
Plaintiff Was Not Aware (Doc. #56)

With this motion, Goodrich requests that the Court prevent the Plaintiff from

introducing evidence of four incidents about which her counsel questioned Stephen

Brandt ("Brandt"), Goodrich's Labor Relations Manager, during his deposition.

Goodrich has not, however, identified those incidents, although contending that

these unidentified incidents are irrelevant, given that Hughes was not aware of

them.  Plaintiff, unlike Goodrich, was willing to trust the Court with a description of

the evidence in question, although she has identified only two such incidents.  See

---

[1]Osner has joined in the first of those motions.

Doc. #75 at 5. One incident was a complaint by a female employee of an independent contractor hired by Goodrich that she had been subjected to inappropriate behavior.[2] In particular, she complained that one of Goodrich's male employees had made her feel "uncomfortable." I Brandt Dep. at 69. There in no indication or argument that the male, Goodrich employee, about whom the female complained, was involved in any incident of alleged harassment concerning the Plaintiff.[3] Although Brandt did not identify the date of this incident during his deposition, he did indicate that he received the complaint at the beginning of the month that his deposition was taken, April, 2009, or the month before. I Brandt Dep. at 70. Hughes last worked for Goodrich on June 16, 2006. The male employee of Goodrich was not discharged after the investigation, and the independent contractor transferred the woman who had complained.

The other incident was touched upon in Exhibit EE to Brandt's deposition. That Exhibit appears to be a page from a desk calendar for Thursday, March 27, 2003. Set forth thereon appear to be the complaints of a former female employee of Goodrich, including sexual harassment. Brandt did not identify the document and was not able identify its author from the handwriting thereon. I Brandt Dep. at 213. In addition, he did not know the complainant or anything about her complaint of sexual harassment. Id. at 213-14.

As indicated, Goodrich argues that this evidence is irrelevant. In support of that argument, it relies upon Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321 (6th

---

[2]Brandt testified about this incident during his deposition. I Brandt Dep. at 68-74.

[3]Brandt identified the female who alleged that she had been subjected to inappropriate behavior and the alleged perpetrator of that behavior. It is not necessary for the Court to use their names herein.

Cir. 2008).  Therein, the Sixth Circuit concluded that the District Court had abused

its discretion by refusing to admit evidence about other incidents of alleged sexual

harassment of which the plaintiffs were aware, although they did not observe,

writing:

> Anheuser-Busch cites Burnett v. Tyco Corp., 203 F.3d 980 (6th Cir.
> 2000), for the proposition that this court may consider other acts of
> harassment only if they are "directed to, and with the knowledge" of the
> plaintiff. Id. at 981 (affirming summary judgment for the employer after
> finding that three alleged acts of harassment directed at the plaintiff were
> not sufficiently severe to constitute a hostile work environment and declining
> to consider other-act evidence because the plaintiff was not aware of the
> other acts).  Relying on Burnett, the brewery argues that we are limited to
> the consideration of other acts that a plaintiff personally observed.  The
> brewery also argues that we may consider other acts of harassment only if
> they occurred during the same time period that the plaintiff was being
> harassed.
>
> A review of Burnett and Sixth Circuit [case law] addressing other-act
> evidence, however, makes clear that we may consider evidence of other
> acts of harassment of which a plaintiff becomes aware during the period [of]
> his or her employment, even if the other acts were directed at others and
> occurred outside of the plaintiff's presence.  One of the first cases in this
> circuit to address other-act evidence in the context of a hostile-work-
> environment claim was Abeita [v. Transam. Mailings, Inc., 159 F.3d 246,
> 246 (6th Cir. 1998)].  In Abeita[,] we declined to consider testimony from
> employees other than the plaintiff that a supervisor had acted "boorishly
> toward women in general" because there was no evidence that the plaintiff
> was aware of the other incidents while she was employed.  Id. at 249 n. 4.
> We did, however, consider general comments that were not directed at the
> plaintiff but that were made in her presence.  Id. at 249.
>
> Another key case is Jackson v. Quanex Corp., 191 F.3d 647, 660 (6th
> Cir. 1999), where we held that the district court erred when it refused to
> consider discriminatory conduct directed towards African-American
> employees other than the plaintiff.  Noting that "offensive comments need
> not be directed at a plaintiff in order to constitute conduct violating Title
> VII," we concluded that evidence of racist conduct targeting other
> employees "certainly mattered as to whether the work environment" was
> objectively hostile, and "evidence that [the plaintiff] learned of these
> incidents clearly demonstrated that the plaintiff subjectively perceived that
> her work environment was one hostile to her."  Id.

- 4 -

The court in Jackson reasoned that the consideration of offensive acts solely directed at the plaintiff in isolation from other acts that occur in the workplace would "defeat the entire purpose of allowing claims based upon a 'hostile work environment' theory, as the very meaning of 'environment' is '[t]he surrounding conditions, influences or forces which influence or modify.'" Id. at 661 (quoting Black's Law Dictionary 534 (6th ed.1990)). We also clearly considered evidence of racial harassment that occurred outside of the plaintiff's presence when evaluating whether the harassment was severe or pervasive. Id. at 650-62; see also Moore v. KUKA Welding Sys., 171 F.3d 1073, 1077-79 (6th Cir. 1999) (considering evidence of racial harassment that occurred outside the presence of the plaintiff because the plaintiff later learned through a coworker that a derogatory term had been used).

This court's [case law] therefore makes clear that the factfinder may consider similar acts of harassment of which a plaintiff becomes aware during the course of his or her employment, even if the harassing acts were directed at others or occurred outside of the plaintiff's presence.

Id. at 335-36.

Herein, there is neither argument nor evidence that Plaintiff was aware of the incident which Brandt investigated in late March or early April of 2009, nearly three years after Plaintiff's employment with Goodrich had ended, or the allegation set forth in Exhibit EE to Brandt's deposition. Nevertheless, Plaintiff argues that the evidence in question is relevant to Goodrich's affirmative defense in accordance with Faragher v. City of Boca Raton, 524 U.S. 775 (1998). See Doc. #75 at 5. Therein, the Supreme Court held that, when a harassing supervisor does not take a tangible employment action against the victim of harassment, the employer has an affirmative defense against charges of harassment, which is comprised of "two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Id.

at 807. When ruling on Goodrich's Motion for Summary Judgment (Doc. #31), this Court concluded that none of those who allegedly harassed Plaintiff was her supervisor. Therefore, the affirmative defense discussed in Faragher is not implicated in this litigation, and the Court rejects the Plaintiff's assertion that it must overrule Defendant's motion, because the evidence in question is relevant to that affirmative defense.

Accordingly, the Court sustains in part and overrules in part Goodrich's Motion in Limine to Exclude Evidence of Unrelated Conduct of Which Plaintiff Was Not Aware (Doc. #56). That motion is sustained as it relates to the incidents discussed herein and is overruled to the extent that with it Goodrich requests that this Court preclude Plaintiff from introducing evidence of any incidents in addition to the two discussed above. This Court expresses no opinion on the admissibility of evidence of any incident unidentified by the parties.[4]

II. Goodrich's Motion in Limine Regarding Evidence of Its Financial Condition (Doc. #63)

With this motion, Goodrich moves to exclude evidence of its financial condition from the jury's consideration, if and when it considers the question of an award of punitive damages against it. According to Goodrich, United States Supreme Court "precedent does not include a defendant's wealth among the factors relevant to assessing punitive damages and prohibits a jury from

---

[4]It bears emphasis that Goodrich has requested that the Court exclude evidence of four incidents, without identifying any of the incidents. Plaintiff has identified only two of those incidents.

increasing a punitive damage award based on the wealth of the defendant. Thus,

evidence of Goodrich's financial condition should be excluded at trial."  Doc. #63

at 1.  Because Goodrich fundamentally misinterprets Supreme Court authority, this

Court rejects its assertion that evidence of its financial condition must be excluded

from the punitive damages phase of the trial.[5]

In BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996), the Supreme

Court adopted three guideposts which will control a court's decision when a

defendant argues that the jury has awarded an unconstitutionally excessive amount

of punitive damages, to wit: "the degree of reprehensibility of the [the defendant's

misconduct]; the disparity between the harm or potential harm suffered by [the

plaintiff] and [the] punitive damages award; and the difference between [the

punitive damages awarded by the jury] and the civil penalties authorized or

imposed in comparable cases."  Id. at 575.  In accordance with Gore, the Supreme

Court has rejected the proposition that the defendant's wealth will transform an

otherwise unconstitutionally excessive award of punitive damages into one that

comports with due process.  In State Farm Mut. Auto. Ins. Co. v. Campbell, 538

U.S. 408 (2003), the Supreme Court wrote:

> Here the argument that State Farm will be punished in only the rare case,
> coupled with reference to its assets (which, of course, are what other
> insured parties in Utah and other States must rely upon for payment of
> claims) had little to do with the actual harm sustained by the Campbells.
> The wealth of a defendant cannot justify an otherwise unconstitutional

---

[5]As it has in every case in which the plaintiff seeks to introduce evidence of the
defendant's financial condition in order to support an award of punitive damages,
this Court will bifurcate the question of punitive damages from the issues of
liability and compensatory damages.  Therefore, the jury will not hear evidence of
Goodrich's financial condition, unless and until the Plaintiff has prevailed against
that Defendant.

punitive damages award.  <u>Gore</u>, 517 U.S., at 585 ("The fact that BMW is a large corporation rather than an impecunious individual does not diminish its entitlement to fair notice of the demands that the several States impose on the conduct of its business"); see also id., at 591 (BREYER, J., concurring) ("[Wealth] provides an open-ended basis for inflating awards when the defendant is wealthy .... That does not make its use unlawful or inappropriate; it simply means that this factor cannot make up for the failure of other factors, such as 'reprehensibility,' to constrain significantly an award that purports to punish a defendant's conduct").

<u>Id</u>. at 427-28 (emphasis added).  Moreover, in <u>Pacific Mut. Life Ins. Co. v. Haslip</u>, 499 U.S. 1 (1991), the Supreme Court approved jury instructions that permitted the jury to consider, among other factors, the defendant's financial condition.  <u>Id</u>. at 21-22.  In <u>TXO Prod. Corp. v. Alliance Res. Corp.</u>, 509 U.S. 443 (1993) (plurality opinion), the plurality cited <u>Haslip</u> approvingly in rejecting the defendant's contention that the jury impermissibly considered its "impressive net worth," noting that it was "well-settled law" to allow consideration of this factor.  <u>Id</u>. at 462 n. 28.  The Supreme Court has not disavowed the foregoing statements from <u>Haslip</u> and <u>TXO</u>.

Accordingly, this Court concludes that, while it will not be permitted to consider Goodrich's financial condition, in the event that the amount of punitive damages is challenged for being excessive in violation of due process, the jury may hear and consider evidence of Goodrich's financial condition to determine the amount of punitive damages to award.  <u>Accord</u> <u>White v. Ford Motor Co.</u>, 508 F.3d 963, 976-77 (9th Cir. 2008).

Based upon the foregoing, the Court overrules Goodrich's Motion in Limine Regarding Evidence of Its Financial Condition (Doc. #63).


September 20, 2010

WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT


Copies to:

Counsel of Record.

- 9 -