IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

AMY LYNN HUGHES,                          :

       Plaintiff,                         :

                                   Case No. 3:08cv263

       vs.                                :

                                JUDGE WALTER HERBERT RICE

GOODRICH CORPORATION, et al.,             :

       Defendants.                        :

DECISION AND ENTRY OVERRULING MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANT TOBIAS OSNER (DOC. #31); DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANT GOODRICH CORPORATION (DOC. #33); DECISION AND ENTRY SUSTAINING MOTION IN LIMINE FILED BY DEFENDANT TOBIAS OSNER TO EXCLUDE EVIDENCE OF HIS CONSENSUAL DATING (DOC. #46); DECISION AND ENTRY OVERRULING, WITHOUT PREJUDICE TO RENEWAL, DEFENDANT GOODRICH'S MOTION TO STRIKE JUDY KNOOP, DR. MARK CORCORAN AND MICHELLE BADGETT JACKSON FROM PLAINTIFF'S WITNESS LIST (DOC. #54); DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING, WITHOUT PREJUDICE, IN PART MOTION IN LIMINE FILED BY DEFENDANT GOODRICH CORPORATION TO EXCLUDE EVIDENCE RELATED TO STATE AGENCY'S FINDINGS AND DETERMINATIONS (DOC. #55); DECISION AND ENTRY OVERRULING MOTION IN LIMINE FILED BY DEFENDANT GOODRICH CORPORATION TO EXCLUDE REFERENCE TO PLAINTIFF'S RESIGNATION AS A TERMINATION OR CONSTRUCTIVE DISCHARGE (DOC. #57); DECISION AND ENTRY SUSTAINING MOTION FILED BY DEFENDANT TOBIAS OSNER TO JOIN IN CERTAIN MOTIONS IN LIMINE FILED BY DEFENDANT GOODRICH CORPORATION (DOC. #61); DECISION AND ENTRY OVERRULING WITHOUT PREJUDICE TO RENEWAL PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE CERTAIN EXHIBITS (DOC. #62);

DECISION AND ENTRY DECLARING MOOT PLAINTIFF'S MOTION
FOR EXPEDITED HEARING REGARDING DEFENDANTS' RULE 412
MOTIONS (DOC. #68)

---

Plaintiff Amy Hughes ("Plaintiff" or "Hughes") brings this litigation against her former employer, Defendant Goodrich Corporation ("Goodrich"), and a supervisor employed by Goodrich, Defendant Tobias Osner ("Osner"). The gravamen of Plaintiff's Complaint (Doc. #1) is that she was the victim of sexual harassment while employed by Goodrich. Osner is alleged therein to have been one of those who harassed her. In her Complaint (Doc. #1), Plaintiff has set forth a number of claims arising under both federal and state law, to wit: 1) a claim against Goodrich of hostile environment sexual harassment against under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq.; 2) a similar claim of sexual harassment under Chapter 4112 of the Ohio Revised Code ("Chapter 4112") against Goodrich and Osner; 3) a claim of constructive discharge for sexual harassment under Title VII and Chapter 4112 against Goodrich; 4) a claim against Goodrich for the tort of sexual harassment under the common law of Ohio; 5) a claim against Goodrich for discharge in violation of public policy under the common law of Ohio; and 6) a claim against both Goodrich and Osner of intentional infliction of serious emotional distress under the Ohio common law.

The Plaintiff was hired by Goodrich on July 15, 2002, to work as a shipping clerk in its Troy, Ohio, facility.[1] Although she took smoke breaks near the loading

---

[1]Since this litigation is before the Court on the Defendants' Motions for Summary Judgment, the Court sets forth the facts and circumstances giving rise to this litigation in the manner most favorable to the Plaintiff, the party against whom summary judgment is being sought.

dock, for the most part, she performed her duties in the shipping office, working with her supervisor, Jim Barr ("Barr"), and co-workers Marilyn Hughes and Linda Hoover ("Hoover").

Two weeks after she had been hired, Plaintiff was approached by Ron Hicks ("Hicks"), a co-worker, while she was on break.  Hicks asked her whether she was an exotic dancer.  When Hughes asked Hicks why he would ask such a rude question, he responded "because you have big tits and a nice ass, and the pants you wear."  Plaintiff's Dep. Ex. 37 at ¶ 4.[2]  Plaintiff, who had previously worked as an exotic dancer, immediately reported the incident to Barr.  Barr merely told her to ignore such comments and agreed to her request that she be permitted to take her breaks in a different area.

Throughout her employment, male co-workers, including Osner, continued to make unwelcome comments to Plaintiff about her body, primarily her breasts.  Plaintiff testified about those incidents during her deposition and has detailed them in Deposition Exhibit 37.  See Plaintiff's Dep. at 122-26.  Osner also propositioned her for sex and inappropriately touched her breasts on two occasions.  Plaintiff did not report any of these incidents to Barr or to anyone in the Human Resources Department at Goodrich.

On August 2, 2005, Richard Divens ("Divens"), an employee of Goodrich, was in the shipping office with Hughes and Terry Shira ("Shira"), another Goodrich employee.  Divens grabbed Shira by the arms and suggested that Plaintiff perform a sexual act on Shira.  Neither Barr nor Hoover was working that day.  When

---

[2]Exhibit 37 to Plaintiff's Deposition is her statement concerning some of the events upon which this litigation is based, which she swore to under oath.  Therefore, that document is an affidavit.

Hoover returned to work, Hughes told her about what Divens had done. Hoover encouraged her to report the incident and agreed to accompany her when she told Barr about it. Upon being informed about the incident, Barr reported it the Goodrich's Human Resources Department. Goodrich fired Divens, who exercised his right as a union employee to grieve his discharge. That grievance was ultimately arbitrated by the union and Goodrich, and Divens' discharge was affirmed. Stephen Brandt ("Brandt"), Labor Relations Manager at Goodrich's Troy facility, attended the arbitration on behalf of Goodrich.[3] During the arbitration, Divens' defense was that sexually charged language was commonplace among Goodrich's workforce. To that end, one male employee testified at the arbitration that male employees of Goodrich told sexually explicit jokes at work. Despite hearing that testimony, Brandt did not order an investigation, nor did he direct that employees be given additional training about sexual harassment. After Divens had been discharged, Hughes was retaliated against by co-workers for having reported his acts of sexual harassment.

Hughes submitted her two-week notice to Goodrich on June 14, 2006. Although that notice indicated that her last day of work would be June 30th, she did not return to work after June 16th. After she had left her employment with Goodrich, Plaintiff retained counsel and pursued a charge of discrimination against her former employer with the Ohio Civil Rights Commission and ultimately initiated this litigation.

---

[3]In that capacity, Brandt was responsible for investigating complaints of sexual harassment at Goodrich's Troy facility.

This case is now before the Court on Motions for Summary Judgment filed by Osner (Doc. #31) and Goodrich (Doc. #33).  In addition, a number of Motions in Limine are pending.  As a means of analysis, the Court will initially set forth the procedural standards it must apply whenever ruling on a motion seeking summary judgment, following which it will turn to the parties' arguments in support of and in opposition to the two such motions pending herein, discussing that filed by Osner before ruling upon Goodrich's.  The Court will then rule upon the Motions in Limine, to the extent that they remain viable after the Court has ruled upon the pending requests for summary judgment.

I.  Procedural Standards Applicable to Motions for Summary Judgment

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323.  See also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir. 1987)).  The burden then shifts to the nonmoving party who "must set forth specific facts

showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial."  Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995).  Read together, Liberty Lobby and Celotex stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50).  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  See also Michigan Protection and Advocacy Service, Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff.").  Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position.  Celotex Corp., 477 U.S. at 324.  Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  Summary judgment

shall be denied "[i]f there are … 'genuine factual issues that properly can be

resolved only by a finder of fact because they may reasonably be resolved in favor

of either party.'"  Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992)

(citation omitted).  Of course, in determining whether a genuine issue of material

fact exists, a court must assume as true the evidence of the nonmoving party and

draw all reasonable inferences in the favor of that party.  Anderson, 477 U.S. at

255 (emphasis added).  If the parties present conflicting evidence, a court may not

decide which evidence to believe, by determining which parties' affiants are more

credible; rather, credibility determinations must be left to the fact-finder.  10A

Wright, Miller & Kane, Federal Practice and Procedure, § 2726.  In ruling on a

motion for summary judgment (in other words, in determining whether there is a

genuine issue of material fact), "[a] district court is not … obligated to wade

through and search the entire record for some specific facts that might support the

nonmoving party's claim."  Interroyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th

Cir. 1989), cert. denied, 494 U.S. 1091 (1990).  See also L.S. Heath & Son, Inc.

v. AT&T Information Systems, Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco

Resins, Inc., 953 F.2d 909, 915 n. 7 (5th Cir.), cert. denied, 506 U.S. 832 (1992)

("Rule 56 does not impose upon the district court a duty to sift through the record

in search of evidence to support a party's opposition to summary judgment ….").

Thus, a court is entitled to rely, in determining whether a genuine issue of material

fact exists on a particular issue, only upon those portions of the verified pleadings,

depositions, answers to interrogatories and admissions on file, together with any

affidavits submitted, specifically called to its attention by the parties.

II.  Osner's Motion for Summary Judgment (Doc. #31)

    According to Plaintiff, Osner sexually harassed her as a result of his comments about her breasts, propositioning her for sex and inappropriately touching her on two occasions.  She has set forth two claims against him, to wit: sexual harassment in violation of Chapter 4112 and intentional infliction of emotional distress.  Osner argues that he is entitled to summary judgment, because damages are an essential of both of those claims, and Plaintiff waived her right to recover damages from him during her deposition.  For reasons which follow, this Court does not agree.

    Osner's counsel began his questioning of Hughes, during her deposition, by asking her about an email Osner had sent her on January 30, 2005.  Hughes Dep. at 235.  Hughes acknowledged that the email was a tribute to motherhood in general and to her, as a mother, in particular.  Id. at 236.  Hughes conceded that she appreciated receiving the email and that she and Osner were good friends on the date of the email.  Id.  Osner's counsel then pointed out that his client was attending the deposition and made certain that Plaintiff recognized him.  Id. Counsel then stated: "You know him[;] he's not a wealthy man.  You know that, true?"  Id.  Counsel's next question was "[d]o you want money from [Osner] as a result of this lawsuit."  Id.  Hughes answered "No".  Id. at 237.  According to Osner, Plaintiff waived her right to collect damages from him as a result of her answer to the last quoted question.

    In support of this argument, Osner has relied upon Wigg v. Sioux Falls School Dist. 49-5, 274 F. Supp.2d 1084 (D.S.D. 2003), affirmed in part and

reversed in part on other grounds, 382 F.3d 807 (8th Cir. 2004). Therein, the plaintiff, who was employed by the defendant as an elementary school teacher, alleged that it had violated her rights under the Free Exercise Clause of the First Amendment, by indicating that she would be violating school policy, if she attended meetings of the Good News Club, an after-school club sponsored by the Child Evangelism Fellowship. The purpose of the Good News Club was to "evangelize boys and girls with the Gospel of the Lord Jesus Christ and establish (disciple) them in the Word of God and in the local church for Christian living." 274 F. Supp.2d at 1087. The Good News Club met at the elementary school at which Plaintiff taught, and some of her students attended those meetings. In the course of ruling on the defendant's request to strike the plaintiff's jury demand, the District Court held that the plaintiff had abandoned her right to recover damages, because she stated clearly on two occasions during her deposition that she was not seeking damages in that case. Id. at 1089. Since that decision did not report the context in which the plaintiff indicated that she was not seeking damages, this Court does not find it to be persuasive.

Hughes initially argues that Osner is not entitled to summary judgment, because, even if she has waived her right to recover damages, she can recover nominal damages. Nominal damages may be recovered under Ohio law, when a plaintiff has suffered a legal wrong, which has failed to cause an injury. See e.g., DeCastro v. Wellston City School Dist. Bd. of Ed., 94 Ohio St.3d 197, 761 N.E.2d 612 (2002). The Court discusses this concept as it relates to the Plaintiff's two claims against Osner, sexual harassment in violation of Chapter 4112 and intentional infliction of emotional distress, in the above order.

In arguing that nominal damages are not available, Osner relies upon Bock v. Hamilton County Bd. of Park Commissioners, 132 Ohio App.3d 726, 799, 726 N.E.2d 509, (1999).  Therein, the Hamilton County Court of Appeals affirmed the decision of the trial court to grant the defendant's motion for judgment on the pleadings.  The plaintiffs had set forth a claim of loss of consortium, derivative of their daughter's claim of sexual harassment in violation of Chapter 4112.  The parents alleged that their minor daughter, while employed by the defendant, had a sexual relationship with her supervisor.  The parents had not, however, alleged that their daughter was actually injured, emotionally or physically, as a result of that affair.  The appellate court held that, since the sexual relationship between the plaintiffs' daughter and her supervisor was not sexual harassment per se, the plaintiffs' claim must be dismissed in the absence of an allegation that their daughter had suffered an emotional or physical injury.  Bock is too thin a reed for this Court to conclude that nominal damages cannot be recovered for a claim of sexual harassment.  Sexual harassment is a legal wrong.  As the Ohio Supreme Court indicated in DeCastro, nominal damages may be recovered when the plaintiff has suffered a legal wrong, without sustaining an injury.

With respect to Plaintiff's claim of intentional infliction of emotional distress, Ohio's intermediate appellate courts have uniformly held that to recover for such a claim, the plaintiff must prove that she suffered a severe and debilitating injury. See e.g., Mendlovic v. Life Line Screening of Am., Ltd., 173 Ohio App.3d 46, 58, 877 N.E.2d 377, 386 (2007); Fisher v. Am. Red Cross Blood Serv., 139 Ohio App.3d 658, 663, 745 N.E.2d 462, 465 (2000); Cherney v. Amherst, 66 Ohio App.2d 411, 413-14, 584 N.E.2d 84, 86 (1991).  In Cherney, the court explained:

> Under the tort of intentional infliction of emotional distress, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." <u>Yeager v. Local Union 20</u> (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666, syllabus. In order to state a claim for intentional infliction of emotional distress the emotional distress must be serious. <u>Id</u>. at 374, 6 OBR at 425, 453 N.E.2d at 670. Serious emotional distress engenders emotional injury which is severe and debilitating. <u>Paugh v. Hanks</u> (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759, paragraph three of the syllabus.

<u>Id</u>. With a claim of intentional infliction of emotional distress, a plaintiff must prove that she suffered a severe and debilitating emotional injury, in order to demonstrate that a legal wrong has been committed against her. Given that nominal damages are awarded when a plaintiff has suffered a legal wrong, albeit without a concomitant injury, and, further, since the injury of serious emotional distress is an element of a claim for intentional infliction of emotional distress, and, thus, necessary for one to suffer a legal wrong for that state law tort, it is not possible to recover for that tort without having suffered an injury. Accordingly, this Court concludes that the Plaintiff cannot recover nominal damages with her claim of intentional infliction of emotional distress.

Therefore, this Court accepts Plaintiff's contention that she may recover nominal damages from Osner on her sexual harassment claim, even if, as a result of her deposition testimony, she waived her right to recover damages, while rejecting that assertion as it relates to her claim for intentional infliction of emotional distress.

Alternatively, Plaintiff argues that the evidence demonstrates that there is a genuine issue of material fact as to whether, by her deposition testimony, she waived her right to collect damages from Osner. In support of that argument,

Plaintiff has submitted her Declaration, in which she explains that she answered "no" to the question posed by Osner's counsel whether she wanted money from Osner as a result of this litigation, because she felt sorry for him.[4]  For reasons which follow, this Court concludes that the evidence raises a genuine issue as to whether Plaintiff waived her right to recover damages from Osner by answering "no" to that question.

It is axiomatic that a party does not demonstrate the existence of a genuine issue of material fact by submitting an affidavit that contradicts her previously given deposition testimony.  See e.g., Aerel, S.R.L. v. PCC Airfoils, LLC, 448 F.3d 899, 906 (6th Cir. 2006).  The Sixth Circuit has also indicated, however, that such an affidavit may be considered when it attempts to explain confusion which the deposition testimony reflects.  Id. at 909.  Herein, construing the evidence in the manner most favorable to the Plaintiff, the party against whom summary judgment is being sought, this Court concludes that Plaintiff's affidavit is an attempt to explain the confusion she was experiencing when she gave her deposition testimony.  Osner's counsel asked her a series of questions that seemed designed to make Plaintiff feel great empathy toward her former co-worker.  Counsel then asked the final question in that series, whether she wanted money from Osner as a result of this lawsuit.  Under these circumstances, this Court concludes that Plaintiff's affidavit can be considered, as part of the context for that series of questions, when ruling on Osner's request for summary judgment and that,

---

[4]Plaintiff's Declaration is appended to her memorandum opposing Goodrich's Motion for Summary Judgment.  See Doc. #39.

therefore, there is a genuine issue of material fact as to whether Plaintiff has waived her right to recover monetary damages from him.

Based upon the foregoing, the Court overrules Osner's Motion for Summary Judgment (Doc. #31).  Given that the Court has concluded that the Plaintiff cannot recover nominal damages on her claim of intentional infliction of emotional distress, the jury will not be instructed that they can award such damages.

### III.  Goodrich's Motion for Summary Judgment (Doc. #33)

As indicated, the Plaintiff has set forth six claims against Goodrich, to wit: three claims of sexual harassment under Title VII, Chapter 4112 and the common law of Ohio; a claim of constructive discharge under Title VII and Chapter 4112; and claims under the Ohio common law for discharge in violation of public policy and intentional infliction of emotional distress.  Goodrich seeks summary judgment on all claims.  As a means of analysis, the Court will address the parties' arguments concerning Goodrich's request for summary judgment on the Plaintiff's claims in the above order.

### 1.  Claims of Sexual Harassment under Title VII, Chapter 4112 and the Ohio Common Law (First, Second and Fourth Claims for Relief in Plaintiff's Complaint)

Goodrich argues that it is entitled to summary judgment on these claims, because, regardless of whether its employees sexually harassed Hughes, it cannot be held liable for that activity.  In Gallagher v. C.H. Robinson Worldwide, Inc., 567 F.3d 263 (6th Cir. 2009), the Sixth Circuit reviewed the standards which must be

applied when determining whether an employer is liable for the sexual harassment
of its employees by a fellow employee:

> The Supreme Court has ruled that employers are not automatically
> liable for sexual harassment perpetrated by their employees.  See Burlington
> Indus., Inc. v. Ellerth, 524 U.S. 742 (1998); Faragher v. City of Boca Raton,
> 524 U.S. 775 (1998).  Where an employee is the victim of sexual
> harassment, including harassment in the form of a hostile work environment,
> by non-supervisory co-workers, an employer's vicarious liability depends on
> the plaintiff showing that the employer knew (or reasonably should have
> known) about the harassment but failed to take appropriate remedial action.
> See Faragher v. City of Boca Raton, 524 U.S. at 789; accord Whidbee v.
> Garzarelli Food Specialties, Inc., 223 F.3d 62, 72 (2d Cir. 2000).  Where the
> harassment is attributed to a supervisor with immediate or successively
> higher authority over the employee, a court looks first to whether the
> supervisor's behavior "culminate[d] in a tangible employment action" against
> the employee, Burlington Indus., Inc. v. Ellerth, 524 U.S. at 765; if it did,
> "the employer will, ipso facto, be vicariously liable," Mack v. Otis Elevator
> Co., 326 F.3d [116] at 124 [(2d Cir.2003)].  In the absence of such tangible
> action, an employer will still be liable for a hostile work environment created
> by its supervisors unless it successfully establishes as an affirmative defense
> that (a) it "exercised reasonable care to prevent and correct promptly any
> sexually harassing behavior," and (b) "the plaintiff employee unreasonably
> failed to take advantage of any preventive or corrective opportunities
> provided by the employer or to avoid harm otherwise."  Burlington Indus.,
> Inc. v. Ellerth, 524 U.S. at 765; accord Faragher v. City of Boca Raton, 524
> U.S. at 807; Mack v. Otis Elevator Co., 326 F.3d at 125.

Id. at 274-75 (quoting Petrosino v. Bell Atlantic, 385 F.3d 210, 225 (2d Cir.
2004)).  The Ohio Supreme Court has applied the standards adopted by federal
courts, to resolve claims of sexual harassment under Title VII, when ruling upon
such claims under Ohio law.  See e.g. Hampel v. Food Ingredients Specialities, Inc.,
89 Ohio St.3d 169, 729 N.E.2d 726 (2000).

Thus, the essential question to be answered, in order to decide the
appropriate standard to apply to determine whether an employer can be held liable
for the sexual harassment of its employees by employees, is whether the

employees alleged to have harassed the plaintiff are supervisors or co-workers. Herein, most of Goodrich's employees who allegedly harassed Hughes were her co-workers; however, two of them, Osner and Rich Coffman ("Coffman"), were employed by Goodrich as supervisors, although neither supervised the Plaintiff.[5]  In other words, Osner and Coffman did not have immediate or successively higher authority over Plaintiff.  Nevertheless, Hughes, focusing strictly on Osner, argues that Goodrich can be held liable under the standards applicable for harassment by supervisory employees.  This Court cannot agree.

Federal courts have taken two approaches to determine whether an individual, employed by a defendant as a supervisor in Osner's position with respect to an employee in Plaintiff's position, is deemed to be that employee's supervisor, even though he does not have immediate or successively higher authority over that employee.

In Mack v. Otis Elevator Co., 326 F.3d 116 (2d Cir. 2003), the Second Circuit held that an individual was a supervisor, if "the authority given by the employer to the employee enabled or materially augmented the ability of the latter to create a hostile work environment for his or her subordinates."  Id. at 126. Therein Mack, employed by the defendant as a mechanic's helper, was assigned to work with six mechanics employed by the defendant at the Metropolitan Life Building in New York City.  In accordance with the applicable collective bargaining agreement, the defendant was required to designate one of the mechanics working at that location as the "mechanic in charge."  James Connolly ("Connolly") was

_____

[5]Osner and Coffman supervised union employees.  Plaintiff was not an employee in the bargaining unit for union workers while employed at Goodrich.

- 15 -

selected for that position. Under the terms of the CBA, the mechanic in charge had "the right to assign and schedule work, direct the work force, assure the quality and efficiency of the assignment, and to enforce the safety practices and procedures." Id. at 120. The plaintiff filed suit against the defendant, alleging that she had been sexually harassed by her supervisor, Connolly. The District Court entered summary judgment in favor of the defendant, concluding that Connolly was not the plaintiff's supervisor, given that he lacked the authority to hire, fire, demote, transfer, promote or discipline her. Upon appeal, the Second Circuit reversed, writing:

> We conclude from facts undisputed in the record on this appeal Connolly's authority over Mack, bestowed upon him by Otis, enabled him, or materially augmented his ability, to impose a hostile work environment on her. Under the rules established by Ellerth and Faragher, Connolly was therefore Mack's supervisor for purposes of Title VII analysis. Not only did he direct the particulars of each of Mack's work days, including her work assignments, he was the senior employee on the work site. He therefore possessed a special dominance over other on-site employees, including Mack, arising out of their remoteness from others with authority to exercise power on behalf of Otis. There was no one superior to Connolly at [the site] whose continuing presence might have acted as a check on Connolly's coercive misbehavior toward other Otis employees there.

Id. at 125 (footnote omitted).

The other approach is exemplified by Parkins v. Civil Constructors of Ill., Inc., 163 F.3d 1027 (7th Cir. 1998),[6] wherein the Seventh Circuit wrote:

> [I]t is manifest that the essence of supervisory status is the authority to affect the terms and conditions of the victim's employment. This authority primarily consists of the power to hire, fire, demote, promote, transfer, or discipline an employee. Absent an entrustment of at least some of this authority, an employee does not qualify as a supervisor for purposes [of] imputing liability to the employer.

---

[6]In Mack, the Second Circuit declined to follow Parkins. 326 F.3d at 126.

Id. at 1034.  Accord Noviello v. City of Boston, 398 F.3d 76, 95-96 (1st Cir. 2005) (holding that "the essence of supervisory status is the authority to affect the terms and conditions of the victim's employment, [which] primarily consists of the power to hire, fire, demote, promote, transfer, or discipline an employee") (internal quotation marks and citations omitted); Joens v. John Morrell & Co., 354 F.3d 938, 940 (8th Cir. 2004) (holding that "the alleged harasser must have had the power (not necessarily exercised) to take tangible employment action against the victim, such as the authority to hire, fire, promote, or reassign to significantly different duties").

Herein, this Court need not decide which approach to follow, because, regardless of which was to be adopted, the evidence would fail to raise a genuine issue of material fact as to whether Osner was Plaintiff's supervisor.  Osner was not authorized by Goodrich to hire, fire, demote, promote, transfer and/or discipline Hughes.  Therefore, under the approach exemplified by Parkins, the evidence fails to raise a genuine issue of material fact as to whether Osner was the Plaintiff's supervisor.  As to the approach adopted by the Second Circuit in Mack, there is simply no indication in the evidence before the Court that Osner had authority over Plaintiff, which is analogous to that which Connolly exercised over Mack.  For instance, Barr, rather than Osner, directed the particulars of each of Hughes' work days, including her work assignments.  Moreover, there is no evidence that Osner was Goodrich's senior employee at its Troy facility.  Accordingly, the Court concludes that the evidence fails to raise a genuine issue of material fact as to whether Osner can be deemed Plaintiff's supervisor under the approach adopted by the Second Circuit in Mack.

Based upon the foregoing, this Court concludes that Goodrich cannot be held liable under the theory that Osner was Plaintiff's supervisor. Therefore, Goodrich's liability is dependent upon the Plaintiff submitting evidence sufficient to raise a genuine issue of material fact that Goodrich "knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action." Gallagher, 567 F.3d at 274. For reasons which follow, this Court concludes that the evidence raises such a genuine issue of fact as to that question.

As is indicated above, shortly after she had been hired by Goodrich, Plaintiff was subjected to harassing conduct by a co-worker, who made salacious, unwelcome comments about her body and the clothing which she wore. Plaintiff complained about this incident to Barr, her supervisor, who merely told her to ignore the comments. Given that Plaintiff informed Barr, her supervisor, about the initial incident of sexual harassment directed at her, the evidence raises a genuine issue of material fact as to whether Goodrich knew or should have known of the harassment. Moreover, that Barr merely told Plaintiff to ignore the comments raises a genuine issue of material fact on the question of whether Goodrich failed to take appropriate remedial action in response to the sexual harassment that was visited upon Hughes shortly after she commenced her employment at Goodrich. This Court's conclusion that the evidence raises a genuine issue of material fact on the question of whether Goodrich knew or should have known of the harassment and to take appropriate remedial action in response thereto, is reinforced by the reaction of Brandt (or more precisely non-reaction) to hearing testimony during Divens' arbitration that male employees at the Troy facility told sexually explicit jokes at work.

Based upon the foregoing, the Court overrules Goodrich's Motion for Summary Judgment (Doc. #33), as it relates to Plaintiff's claims of sexual harassment in violation of Title VII, Chapter 4112 of the Ohio Revised Code and the common law of Ohio, the First, Second and Fourth Claims for Relief in her Complaint.  That said, however, this Court has concluded that liability cannot be imposed on Goodrich under a supervisor liability theory, but only pursuant to a co-worker theory of liability.

2.  Constructive Discharge in Violation of Title VII and Chapter 4112 (the Third Claim for Relief in Plaintiff's Complaint)

Goodrich moves for summary judgment on this claim, arguing that the evidence fails to raise a genuine issue of material fact concerning the question of whether it constructively discharged her.  In Goldmeier v. Allstate Ins. Co., 337 F.3d 629 (6th Cir. 2003), the Sixth Circuit discussed the burden on a plaintiff alleging that she was constructively discharged:

> The Goldmeiers maintain that they were constructively discharged. "To constitute a constructive discharge, the employer must deliberately create intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the employee to quit and the employee must actually quit." Moore v. KUKA Welding Sys. & Robot Corp., 171 F.3d 1073, 1080 (6th Cir. 1999); see also Logan v. Denny's, Inc., 259 F.3d 558, 568-69 (6th Cir. 2001).  In the case of constructive discharge, "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." Kocsis v. Multi-Care Management, Inc., 97 F.3d 876, 887 (6th Cir. 1996) (quoting Held v. Gulf Oil Co., 684 F.2d 427, 432 (6th Cir. 1982)).  "In determining whether an environment is one that a reasonable person would find hostile or abusive and that the plaintiff in fact did perceive to be so, courts look at all of the circumstances."  Hafford v. Seidner, 183 F.3d 506, 512 (6th Cir. 1999).  Such circumstances include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance." Harris v. Forklift Sys., 510 U.S. 17, 23 (1993); accord Abeita v. TransAmerica Mailings, Inc., 159 F.3d 246, 251 (6th Cir.1998); Hafford, 183 F.3d at 512.  The circumstances are examined from the point of view of a reasonable member of the protected class.  See Yates v. Avco Corp., 819 F.2d 630, 636-37 & n. 2 (6th Cir. 1987) (evaluating whether sexual harassment constitutes constructive discharge from the point of view of a reasonable member of the gender being harassed).

Id. at 635.  See also Smith v. Henderson, 376 F.3d 529, 533-34 (6th Cir. 2004).

Applying the facts underlying this litigation to the foregoing legal standards, this Court concludes that the evidence raises a genuine issue of material fact as to whether Plaintiff was constructively discharged.  For instance, throughout her employment with Goodrich, she was repeatedly subjected to sexual harassment, in the form of unwelcome comments about her body and suggestions that she engage in sex with various co-workers.

Alternatively, Goodrich argues that it is entitled to summary judgment on this claim, because Hughes repeatedly admitted that she left her employment in order to become a stay-at-home mother.  Quite simply, none of the passages from Plaintiff's deposition cited by Goodrich in support of this assertion demonstrate that Hughes left her employment with that Defendant in order to be a stay-at-home mother, rather than because of the sexual harassment to which she was subjected throughout her employment.

Accordingly, the Court overrules Goodrich's Motion for Summary Judgment (Doc. #33), as it relates to Plaintiff's claim of constructive discharge.

3.  Wrongful Discharge in Violation of Public Policy (the Fifth Claim for Relief in
Plaintiff's Complaint

Goodrich argues that it is entitled to summary judgment on this claim,
because Title VII and Chapter 4112 provide her a full range of remedies.  In
Carrasco v. NOAMTC, Inc., 124 Fed. Appx. 297, 304 (6th Cir.2004), the Sixth
Circuit affirmed the dismissal of plaintiff's retaliation claim in violation of public
policy, because both Title VII and § 4112 provide adequate remedies to protect the
policy embodied in those statutes.  Ohio courts have reached the same result,
albeit considering Chapter 4112, alone.  See e.g., Lewis v. Fairview Hosp., 806
N.E.2d 185, 189, 156 Ohio App.3d 387, 392 (2004); Barlowe v. AAAA  Int'l
Driving Sch., Inc., 2003 WL 22429543, *8 (Ohio App. 2003).  See also Wiles v.
Medina Auto Parts, 96 Ohio St.3d 240, 773 N.E.2d 526 (2002) (holding that a
claim for discharge in violation of the public policy underlying the Family Medical
Leave Act would not lie, because that statute provides sufficient remedies for a
violation of same).  As did the Sixth Circuit in Carrasco and the Ohio intermediate
appellate court in Lewis and Barlowe, this Court concludes that a claim for
discharge in violation of public policy, the public policy being that underlying Title
VII and Chapter 4112, is not available, because of the adequate remedies provided
by those statutes

Accordingly, this Court sustains Goodrich's Motion for Summary Judgment
(Doc. #33), as it relates to Plaintiff's claim of discharge in violation of public policy,
the Fifth Claim for Relief in her Complaint.

4. Intentional Infliction of Emotional Distress (the Sixth Claim for Relief in

Plaintiff's Complaint)

In seeking summary judgment on this claim, Goodrich argues that "[t]here is

simply no reasonable basis for a jury to conclude that Goodrich intended or caused

unbearable emotional distress to Hughes, and her claim should be dismissed."

Doc. #33 at 19. This Court cannot agree with Goodrich's argument in that regard.

In support, of that proposition, Goodrich relies upon a decision by the Sixth

Circuit in which it affirmed the grant of summary judgment in favor of the

defendant on claims of sexual harassment and intentional infliction of emotional

distress, writing:

> Last, as to plaintiff's cause of action for intentional infliction of
> emotional distress, we agree with the court below and find that plaintiff has
> failed to present sufficient evidence as a matter of law to create an issue of
> material fact to sustain her claim. We thus affirm the grant of summary
> judgment for defendant on plaintiff's claim of intentional infliction of
> emotional distress.

Courtney v. Landair Transport, Inc., 227 F.3d 559, 567 (6th Cir. 2000). Courtney

arose under a different set of facts than the instant case. For instance, therein, the

Sixth Circuit affirmed the District Court's grant of summary judgment on plaintiff's

sexual harassment claim, while this Court has concluded that genuine issues of

material fact prevent the entry of summary judgment against Plaintiff on her sexual

harassment claim herein. Therefore, Courtney does not cause this Court to

conclude that Goodrich is entitled to summary judgment on this claim. Moreover,

the Court notes that the Plaintiff's treating physician, Dr. Robert Gaylor, M.D., will

testify, if permitted, that the stress, which has been visited upon Hughes as a

result of the alleged sexual harassment, has caused her to suffer irritable bowl

syndrome. In addition, there is ample evidence discussed above that Goodrich acted intentionally, by ignoring Plaintiff's initial complaints that she was being harassed, and that the constant harassment to which Hughes was subjected rendered her workplace intolerable. Yeager v. Local Union 20, 6 Ohio St.3d 369, 374-756, 453 N.E.2d 666, 671-72 (1983) (holding that to recover for tort of intentional infliction of emotional distress, defendant's conduct must be so extreme and outrageous that it is utterly intolerable in a civilized society).

Accordingly, the Court overrules Goodrich's Motion for Summary Judgment (Doc. #33), as it relates to Plaintiff's claim of intentional infliction of emotional distress, the Sixth Claim for Relief in her Complaint.

The entirety of Goodrich's Motion for Summary Judgment (Doc. #33) is overruled, save and excepting that portion directed to Plaintiff's Fifth Claim for Relief, discharge in violation of public policy, which is sustained.

IV. Motions in Limine

The following motions in limine are pending in this litigation, to wit: Osner's Motion in Limine to Exclude Evidence of His Consensual Dating (Doc. #46); Goodrich's Motion to Strike Judy Knoop, Dr. Mark Corcoran and Michelle Badgett Jackson from Plaintiff's Witness List (Doc. #54); Goodrich's Motion in Limine to Exclude Evidence Related to State Agency's Findings and Determinations (Doc. #55); Goodrich's Motion in Limine to Exclude Reference to Plaintiff's Resignation as a Termination or Constructive Discharge (Doc. #57); and Plaintiff's Motion for Expedited Hearing Regarding Defendants' Rule 412 Motions (Doc. #68).

As a means of analysis, the Court will address these motion in the above order, discussing related motions together.[7]


## I.  Osner's Motion in Limine to Exclude Evidence of His Consensual Dating (Doc. #46)

With this motion, Osner requests that the Court prohibit the Plaintiff from introducing evidence that he had consensual dating relationships with other co-workers at Goodrich.  One of those relationships occurred 20 years ago, while the other is currently ongoing.  Neither occurred during Hughes' employment with

---

[7]Osner's Motion to Join in Certain Motions in Limine Filed by Goodrich (Doc. #61) is also pending.  With that motion, Osner seeks to join in the following motions filed by Goodrich, to wit: Motion in Limine to Admit Evidence of Plaintiff's Conduct and Conversations at Work (Doc. #52); Motion in Limine to Exclude Testimony of Robert Gaylor, M.D. (Doc. #53); Motion to Strike Judy Knoop, Dr. Mark Corcoran and Michelle Badgett Jackson from Plaintiff's Witness List (Doc. #54); Motion in Limine to Exclude Evidence Related to State Agency's Findings and Determinations (Doc. #55); Motion in Limine to Exclude Evidence of Unrelated Conduct of Which Plaintiff Was Not Aware (Doc. #56); and Motion in Limine to Exclude Reference to Plaintiff's Resignation as a Termination or Constructive Discharge (Doc. #57).  The Court sustains Osner's Motion to Join in Certain Motions in Limine Filed by Goodrich (Doc. #61), as a result of which the foregoing motions filed by Goodrich will be equally applicable to Osner.

Plaintiff's Motion in Limine to Exclude Certain Exhibits (Doc. #62) is also pending.  With that motion, Plaintiff requests that this Court exclude from evidence a number of exhibits identified by Goodrich.  The Court does not presently have copies of those exhibits.  Therefore, the Court overrules Plaintiff's Motion in Limine to Exclude Certain Exhibits (Doc. #62), without prejudice to renewal at the Final Pretrial Conference, by which time the Court will have been furnished copies of Goodrich's exhibits.

In addition, this Court will rule by separate entry on Goodrich's Motion in Limine to Exclude Testimony of Robert Gaylor, M.D. (Doc. #53), its Motion in Limine to Exclude Evidence of Unrelated Conduct of Which Plaintiff Was Not Aware (Doc. #56) and its Motion in Limine Regarding Evidence of its Financial Condition (Doc. #63).

Goodrich.  Osner argues that evidence of his consensual dating relationships is inadmissible because it is not relevant, as that term is defined by Rule 401 of the Federal Rules of Evidence.  In addition, he contends that, even if that evidence is relevant, it must be excluded in accordance with Rule 403 of the Federal Rules of Evidence, because its probative value, which according to Osner is nonexistent, is substantially outweighed by the danger of unfair prejudice and confusion of the issues.  Finally, Osner contends that this evidence must be excluded in accordance with Rule 404(b) of the Federal Rules of Evidence, because such would be other acts evidence, used to prove his character, in order to show that he acted in conformity therewith.  For reasons which follow, this Court concludes that this evidence is inadmissible, because it is not relevant; therefore, it is not necessary to consider Osner's arguments predicated upon Rules 403 and 404(b).

Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence which is not relevant is inadmissible.  Fed. R. Evid. 402.  In her memorandum opposing this motion, Plaintiff acknowledges that her claims against Osner are predicated upon the allegations that he "made comments about her breasts, propositioned her for sex, and twice touched her inappropriately." Doc. #75 at 2 (internal quotation marks omitted).  According to Hughes, Osner's consensual dating is relevant, because evidence that he was willing to enter into consensual dating relationships with co-workers makes it more likely that he would proposition a third co-worker for sex.  Id.  This Court cannot agree with Plaintiff

that engaging in behavior which is socially appropriate makes it more likely that an individual will engage in socially unacceptable behavior.

Accordingly, the Court sustains Osner's Motion in Limine to Exclude Evidence of His Consensual Dating (Doc. #46).


2. Osner's Motion in Limine Concerning Rule 412 (Doc. #47); Goodrich's Motion in Limine to Admit Evidence of Plaintiff's Conduct and Conversations at Work (Doc. #52); and Plaintiff's Motion for Expedited Hearing Regarding Defendants' Rule 412 Motions (Doc. #68)

These three motions implicate Rule 412 of the Federal Rules of Evidence, which provides in relevant part:

> (a) Evidence generally inadmissible.—The following evidence is not admissible in any civil or criminal proceeding involving alleged sexual misconduct except as provided in subdivisions (b) and (c):
> (1) Evidence offered to prove that any alleged victim engaged in other sexual behavior.
> (2) Evidence offered to prove any alleged victim's sexual predisposition.
> (b) Exceptions.—
>
>       *               *              *
>
> (2) In a civil case, evidence offered to prove the sexual behavior or sexual predisposition of any alleged victim is admissible if it is otherwise admissible under these rules and its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party. Evidence of an alleged victim's reputation is admissible only if it has been placed in controversy by the alleged victim.
> (c) Procedure to determine admissibility.—
> (1) A party intending to offer evidence under subdivision (b) must—
>     (A) file a written motion at least 14 days before trial specifically describing the evidence and stating the purpose for which it is offered unless the court, for good cause requires a different time for filing or permits filing during trial; and

> (B) serve the motion on all parties and notify the alleged victim or,
> when appropriate, the alleged victim's guardian or representative.
> (2) Before admitting evidence under this rule the court must conduct a
> hearing in camera and afford the victim and parties a right to attend and be
> heard.  The motion, related papers, and the record of the hearing must be
> sealed and remain under seal unless the court orders otherwise.

During the conference call which this Court conducted with counsel on January
27, 2010, it indicated that it would schedule a hearing, in accordance with Rule
412(c), after which a determination as to the admissibility of such evidence would
be made.  The Court declares moot Plaintiff's Motion for Expedited Hearing
Regarding Defendants' Rule 412 Motions (Doc. #68), given that said hearing
occurred on Thursday, August 26, 2010, and a decision is pending on Osner's
Motion in Limine Concerning Rule 412 (Doc. #47) and Goodrich's Motion in Limine
to Admit Evidence of Plaintiff's Conduct and Conversations at Work (Doc. #52).


3.  Goodrich's Motion to Strike Judy Knoop, Dr. Mark Corcoran and Michelle
Badgett Jackson from Plaintiff's Witness List (Doc. #54)

Goodrich argues that the Court should prevent those witnesses from
testifying, because it was unable to depose them.[8]  Since this Court continued the
trial date for this matter and has extended the discovery cut-off, Goodrich has had
the opportunity to depose Knoop, Corcoran and Jackson, and the Court is
confident that Plaintiff has made certain that those three potential witnesses were
available for their depositions.  Accordingly, the Court overrules, without prejudice

---

[8]According to Goodrich, Corcoran and Knoop ignored previously served subpoenas
for their depositions and Hughes refused to make them available for deposition
purposes, while Jackson was not identified as a potential witness during discovery.

to renewal, Goodrich's Motion to Strike Judy Knoop, Dr. Mark Corcoran and Michelle Badgett Jackson from Plaintiff's Witness List (Doc. #54).

4.  Goodrich's Motion in Limine to Exclude Evidence Related to State Agency's Findings and Determinations (Doc. #55)

With this motion, Goodrich requests that this Court exclude from evidence any findings or determinations made by the Ohio Civil Rights Commission ("OCRC") in response to Plaintiff's charge of discrimination.  In addition, the Plaintiff requests that the Court exclude the affidavit which Hughes submitted to the OCRC.  As a means of analysis, this Court will address those two requests in the above order.

Goodrich requests that this Court exclude from evidence the findings and determinations made by the OCRC in response to Plaintiff's charge of discrimination against the Defendants.  The Sixth Circuit has repeatedly held that whether to admit such documents into evidence is committed to the sound discretion of the District Court.  See e.g. Williams v. Nashville Network, 132 F.3d 1123, 1129 (6th Cir. 1997); Heard v. Mueller Co., 464 F.2d 190, 194 (6th Cir. 1972).  Herein, this Court is unable to exercise that discretion in a meaningful manner, given that Goodrich has failed to provide a copy of that document. Accordingly, the Court overrules, without prejudice to renewal, Goodrich's Motion in Limine to Exclude Evidence Related to State Agency's Findings and Determinations (Doc. #55), as it relates to the request that the Court exclude the OCRC's findings and determinations from evidence.

In addition, Goodrich argues that this Court should exclude the affidavit

Hughes submitted to the OCRC, because it is inadmissible hearsay.[9]  The Plaintiff

has not responded to that request.  This Court agrees with Goodrich that Hughes'

affidavit is hearsay.  Moreover, in the absence of an argument from Plaintiff that

the affidavit falls within an exception to the hearsay rule (or is otherwise admissible

under Fed. R. Evid. 801), the Court is compelled to conclude that it is not

admissible under an exception to such rule.  Rule 801(c) of the Federal Rules of

Evidence defines "hearsay" as "a statement, other than one made by the declarant

while testifying at the trial or hearing, offered in evidence to prove the truth of the

matter asserted."  Hughes' affidavit is an out-of-court statement, which this Court,

in the absence of an argument to the contrary, must assume the Plaintiff would

introduce to prove the truth of the matters set forth therein.  In addition, the

Plaintiff has not argued that the affidavit is admissible in accordance with an

exception to the hearsay rule.  Accordingly, the Court concludes that Hughes'

statement constitutes inadmissible hearsay and, therefore, sustains Goodrich's

Motion in Limine to Exclude Evidence Related to State Agency's Findings and

---

[9]Goodrich has not included a copy of Hughes' affidavit with its motion requesting that this Court exclude that document from evidence, nor has it indicated where that affidavit is located in the record before the Court.  Nevertheless, this Court is of the opinion that the document is Exhibit 37 to Plaintiff's deposition.  For instance, Plaintiff questioned Brandt during his deposition about Goodrich's response to Hughes' affidavit.  A copy of that response was marked as Exhibit DD during that deposition.  A comparison of Exhibits 37 and DD convinces the Court that Exhibit DD is a response to Exhibit 37 and that, therefore, Plaintiff's affidavit is Exhibit 37.  Hughes affidavit should not be confused with her declaration, which she has submitted to oppose Osner's request for summary judgment.

Determinations (Doc. #55), as it relates to the request that the Court exclude

Plaintiff's affidavit from evidence.


5.  Goodrich's Motion in Limine to Exclude Reference to Plaintiff's Resignation as a

Termination or Constructive Discharge (Doc. #57)

Given that the Court has overruled Goodrich's request for summary

judgment on Hughes' claim that she was constructively discharged, the Court

overrules Goodrich's Motion in Limine to Exclude Reference to Plaintiff's

Resignation as a Termination or Constructive Discharge (Doc. #57).


September 21, 2010                                    /s/ Walter Herbert Rice

_____
                                    WALTER HERBERT RICE, JUDGE
                                    UNITED STATES DISTRICT COURT


Copies to:

Counsel of Record.